**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

EVGENII GRISHANOV, )
)
         Petitioner, )
)
      v. )     Case No. 6:26-cv-03328-MBB
)
JIM C. ARNOTT, et al., )
)
         Respondents. )

## ORDER

Petitioner Evgenii Grishanov petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241.  He argues that he is wrongfully detained in violation of the Constitution.  (**Doc. 1**, pp. 14-17).  And he argues that his impending removal violates certain statutory provisions and an international human rights treaty.  (*Id.* at pp. 15-16).  He asks the Court to order Respondents (collectively, the "Government") to immediately release him or provide a bond hearing.  (*Id.* at p. 18).  Because Petitioner's detention does not violate due process, and because the Court lacks jurisdiction to adjudicate his remaining arguments, the petition is DENIED.

### Background

Petitioner claims he was born in a part of Ukraine that Russia later seized.  (*Id.* at p. 6).  He claims that, in 2015, he was forced to obtain a Russian passport when his mother sought political asylum there.  (*Id.* at p. 7).  He allegedly spent the next 7 years living, attending school, and operating a business in Russia.  (*Id.* at pp. 7-8).  Petitioner alleges that he was beaten, harassed, and threatened in Russia because of his "Ukrainian identity" and his anti-Russian political activism.  (*Id.*).  He supposedly fled from Russia, aiming to escape maltreatment by Russian authorities. (*Id.* at pp. 8-9).

Petitioner entered the United States illegally in 2022.  (**Doc. 8-1**, pp. 2, 6); (**Doc. 1**, pp. 7-8).  The Department of Homeland Security ("DHS") charged him as removable under 8 U.S.C. § 1182(a)(6)(A)(i) and released him pending removal proceedings.  (**Doc. 8-1**, p. 2); (**Doc. 1**, p. 6).  He filed an application for asylum nearly two years later.  (**Doc. 8-1**, p. 2); (**Doc. 1-1**, p. 2).  On May 29, 2025, an immigration judge granted Petitioner's request for voluntary departure, ordering him to depart the United States on his own accord.  (**Doc. 8-1**, p. 2); (**Doc. 1**, p. 6).  The immigration judge entered an alternate removal order to Russia should Petitioner violate the voluntary departure order.  (**Doc. 8-1**, pp. 2-3); (**Doc. 1**, p. 6).  The alternate order listed Ukraine as a secondary option for removal.  (**Doc. 8-1**, pp. 2-3); (**Doc. 1**, p. 6).  On September 25, 2025, Petitioner failed to depart the United States, transforming the voluntary departure order into a removal order to Russia and, in the alternative, Ukraine.  (**Doc. 8-1**, p. 3).  He did not appeal the voluntary departure order or the removal order.  (***Id.***).

On October 16, 2025, DHS arrested Petitioner and detained him without bond under 8 U.S.C. § 1231.  (**Doc. 8-1**, p. 4); (**Doc. 1**, p. 2).  On November 5, 2025, DHS was unable to remove Petitioner to Ukraine because he lacked a proper travel document.  (**Doc. 8-1**, p. 5).  The same day, DHS added him to a Russian charter flight without a set departure date.  (***Id.***).  DHS left the door open for removal to Ukraine if Petitioner could obtain a Ukrainian travel document.  (***Id.***).  On February 17, 2026, DHS provided Petitioner with a Ukrainian travel document application.  (***Id.***).  He refused to sign it.  (***Id.***).  On March 15, 2026, DHS again provided Petitioner with a Ukrainian travel document application.  (***Id.***).  This time he completed the application, which was mailed to the Ukrainian consulate on April 6, 2026.  (***Id.***).  On April 21, 2026, the Ukrainian consulate declined to process it because Petitioner is a Russian citizen.  (***Id.*** at p. 6).

2

On April 27, 2026, DHS provided Petitioner with a Russian travel document application, which he refused to sign. (*Id.*). Petitioner moved to re-open his removal proceedings on May 9, 2026. (*Id.*). On May 19, 2026, an immigration judge denied Petitioner's motion. (*Id.*). On June 17, 2026, despite Petitioner's refusal to sign, DHS routed a Russian travel document request. (*Id.*). DHS will schedule Petitioner's removal flight to Russia "[o]nce Russia approves Petitioner's travel document request and Petitioner agrees to be interviewed." (*Id.*).

On June 9, 2026, Petitioner filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. (**Doc. 1**). He acknowledges that he violated the voluntary departure order. (*Id.* at p. 2). He acknowledges that the immigration judge ordered him removed to Russia and, in the alternative, Ukraine. (*Id.* at p. 6). But he argues that the Government may not remove him to Russia because he "asserted a fear of Russia." (*Id.* at p. 10). He argues that his fear-based claim means his detention violates due process because removal to Russia is not "legally available and reasonably foreseeable." (**Doc. 9**, p. 4). He also asserts that his removal to Russia would violate the Immigration and Nationality Act (the "INA"), the Foreign Affairs Reform Restructuring Act of 1998 (the "FARRA"), and the Convention Against Torture (the "CAT"). (**Doc. 1**, pp. 15-16).

### Discussion

28 U.S.C. § 2241 gives federal courts jurisdiction to hear constitutional challenges to the legality of immigration-related detention. *See **Zadvydas v. Davis***, 533 U.S. 678, 687 (2001). *See also **Rasul v. Bush***, 542 U.S. 466, 483-84 (2004) (holding that Section 2241 conferred jurisdiction to hear a challenge to an alien's detention). But "[d]istrict Courts in this circuit and elsewhere agree that a habeas petitioner under § 2241 bears the burden of demonstrating by a preponderance of the evidence that his or her detention is unlawful." ***Vargas Lopez v. Trump***, 802 F. Supp. 3d 1132, 1137 (D. Neb. 2025); ***Johnson v. Mabry***, 602 F.2d 167, 171 (8th Cir. 1979) ("Generally,

3

the burden of proof in a habeas corpus proceeding is on the petitioner to establish by a preponderance of the evidence that he is entitled to relief.").

Petitioner fails to carry that burden. He has not provided "good reason" to believe that his removal is not significantly likely in the reasonably foreseeable future. *Zadvydas*, 533 U.S. at 701. And the Court lacks jurisdiction to consider whether his removal to Russia violates the INA, the FARRA, or the CAT.

I. **Petitioner's detention does not violate due process because he has not provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.**

Though Section 1231 permits detention of aliens ordered removed under Section 1182, "[i]t does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. So the Court asks whether the detention "exceeds a period reasonably necessary to secure removal." *Id.* The Court measures reasonableness "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* The review considers "the greater immigration-related expertise of the Executive Branch," and "Executive Branch primacy in foreign policy matters." *Id.* at 700. Detention for six months is presumptively constitutional. *Id.* at 701. After six months, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

Petitioner was detained because he violated the immigration judge's voluntary removal order. He is the cause of his own detention. *See Pelich v. I.N.S.*, 329 F.3d 1057, 1060 (9th Cir. 2003) ("The risk of indefinite detention that motivated the Supreme Court's statutory interpretation in *Zadvydas* does not exist when an alien is the cause of his own detention."). But he has been detained for approximately 9 months, so the Court will dig deeper.

4

Despite an immigration judge designating Russia as the primary removal country, DHS accommodated Petitioner by attempting to remove him to Ukraine. That effort lasted several months and was extended by Petitioner's refusal to cooperate. When Ukraine declined to accept Petitioner, DHS pivoted to attempt to remove him to Russia on April 27, 2026. Despite Petitioner's ongoing non-cooperation, that effort continues. Only two obstacles remain: Russia's approval of travel documents and Petitioner's cooperation. Petitioner offers no evidence to the contrary. And he offers no evidence that Russia will not approve the travel documents. He has not met his burden to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701. *See also Joseph v. United States*, 127 F. App'x 79, 81 (3d Cir. 2005) (per curiam) (holding that a petitioner failed to show good reason to believe there was no significant likelihood of removal where he offered no evidence that travel documents would not issue).

Petitioner invents a new legal standard to avoid this conclusion. He claims that removal to Russia is not "*legally available and* reasonably foreseeable" because he asserts a fear of torture or persecution in Russia. (**Doc. 9**, pp. 3-4) (emphasis added). But that standard finds no support in the law.

First, habeas relief addresses unlawful detention, not unlawful removal. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention."). "Whether [Petitioner's] fears of torture or persecution in [Russia] could preclude removal there is a distinct issue," which "falls outside the scope of the writ" of habeas corpus. *Gonzalez v. Warden, NDCS Work Ethic Camp*, 2026 WL 1031187, at *4 (D. Neb. Apr. 16, 2026); *Department of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 119 (2020).

5

Second, the Supreme Court's due process analysis in the context of Section 1231 addresses "indefinite detention," not allegedly illegal removal. *See Zadvydas*, 533 U.S. at 689; *Johnson v. Artega-Martinez*, 596 U.S. 573, 579 (2022). Due process is satisfied if removal is reasonably foreseeable. *Zadvydas*, 533 U.S. at 689. "In other words, the *Zadvydas* standard *is* due process: a § 1231 detainee who fails the *Zadvydas* test fails to prove a due process violation." *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024) (emphasis in original). Petitioner's due process claim fails because it fails the *Zadvydas* test.

**II.     The Court lacks jurisdiction to address whether Petitioner's removal to Russia violates the INA, the FARRA, or the CAT.**

"Congress enacted several statutory provisions that limit the circumstances in which judicial review of deportation decisions is available." *Zadvydas*, 533 U.S. at 687. Under to 8 U.S.C. § 1252(a)(5), "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal." "FARRA provides for judicial review of CAT claims as part of the review of a final order of removal." *Nasrallah v. Barr*, 590 U.S. 573, 580 (2020) (internal quotation marks omitted). Even when reviewed separately from removal orders, CAT orders "may not be reviewed in district courts, even via habeas corpus, and may be reviewed only in the courts of appeals." *Id.* at 580-81; **8 U.S.C. § 1252(a)(4)**. That is because, in such cases, "judicial judgment cannot be made to do service for an administrative judgment." *See I.N.S. v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (internal quotation marks omitted).

Petitioner argues that the Government may not remove him to Russia because he alleges a fear of torture or persecution that he claims the Government has not adjudicated. According to Petitioner, such removal would violate the INA, the FARRA, and the CAT. Even if the Court could address those arguments in this collateral proceeding, jurisdiction lies with the

6

administrative agency to consider them in the first instance. *See* **8 U.S.C. § 1229a**; ***Riley v. Bondi***, 606 U.S. 259, 278 (2025) (Thomas, J., concurring) ("CAT claims are addressed in the first instance by an immigration judge."). If Petitioner is unsatisfied with DHS's administrative determination regarding his removal to Russia, he may petition the appropriate court of appeals. Congress expressly forbade this Court from interjecting.

### Conclusion

Petitioner's continued detention does not violate due process. And the Court lacks jurisdiction to consider his remaining arguments. The Petition for a Writ of Habeas Corpus is DENIED.

**IT IS SO ORDERED.**

/s/ Megan Blair Benton
MEGAN BLAIR BENTON
UNITED STATES DISTRICT JUDGE

Dated: July 10, 2026

7